IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID L. STONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BAXTER INTERNATIONAL, INC., A | ) |
| Delaware Corporation; BAXTER | ) |
| HEALTHCARE CORPORATION, A | )    4:08-cv-3201 |
| Delaware Corporation; HAKAM | ) |
| ASAAD, M.D.; DOUGLAS WELSH, | )    REPORT AND |
| M.D.; ALEC AKBAROV, M.D.; | )    RECOMMENDATION |
| DAVID A. DUDLEY, M.D.; DONALD | ) |
| BELL, M.D.; and FAITH REGIONAL | ) |
| HEALTH SERVICES, A Nebraska | ) |
| Non-Profit Corporation, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the following motions:

- Motion to stay proceedings pending transfer by the Judicial Panel on Multidistrict Litigation (Doc. 10)

- Plaintiff's motion to remand this matter to state court (Doc. 17)

- Motion to Remand (Doc. 20) filed by defendants Hakam Asaad, Alec Akbarov and Faith Regional Health Services (FRHS)

The motions have been fully briefed. For the reasons discussed below, I recommend that the

case be remanded to state court for lack of federal jurisdiction.

# I.  BACKGROUND

## A.  The Pleadings

The state court complaint (Doc. 1- 2) alleges that the plaintiff suffered injury in November 2007 after being treated with the anticoagulant drug, Heparin.  Baxter International, Inc. and Baxter Healthcare Corporation (together, "Baxter") allegedly manufactured and sold the Heparin.  The drug was administered to plaintiff by defendants/ doctors Asaad, Welsh, Akbarov, Dudley and Bell at a hospital operated by defendant Faith Regional Health Services (FRHS) in Norfolk, Nebraska.

Baxter International, Inc. and Baxter Healthcare Corporation are Delaware corporations with principal places of business in Deerfield, Illinois.

Plaintiff and the remaining defendants all reside in the State of Nebraska.

The complaint alleges that, on November 4, 2007, FRHS admitted plaintiff to its emergency room for the diagnosis and treatment of an acute myocardial infarction.  He was treated that day by Drs. Asaad and Welsh and placed on intravenous Heparin.  Dr. Akbarov performed coronary artery bypass surgery on November 7, 2007 and administered intravenous Heparin during the procedure.

The defendants administered more intravenous Heparin in response to plaintiff's various post-operative problems.  Plaintiff alleges that his platelet count dropped steadily from 234,000 at the time of his admission to 25,000 on November 13, 2007.  By November 9, plaintiff began to complain of burning neuritic pain in his feet, which was treated with

"aggressive dosing" of intravenous Heparin. Within 90 minutes, plaintiff developed hypotension and was treated with a dopamine infusion. That same day, plaintiff developed dypsnea with associated bronchopspasm. By November 10, plaintiff had developed "lower extremity ischemia with cool feet" and his Heparin was increased. Plaintiff's condition continued to deteriorate.

On November 13, 2007, plaintiff's physicians made a presumptive diagnosis of Heparin induced thrombocytopenia thrombosis (HITT), and the Heparin was discontinued. At that time, plaintiff's extremities appeared salvageable; however, plaintiff was noted as being "desperately ill" and at "a great risk of devitalization and digital or even pedal loss."

Plaintiff's breathing markedly improved after Heparin was discontinued. On December 19, 2007, as a result of the HITT, plaintiff underwent a below the knee amputation of his left leg and a mid-tarsal amputation of his right foot.

Plaintiff alleges that the Heparin he received was manufactured by Baxter and was contaminated by over-sulfated chondroitin sulfate (OSCS), and that the defendants' administration of the Heparin caused him to develop medical conditions, including HITT.

Plaintiff's claims against Baxter are based on theories of strict products liability (defective manufacturing, failure to adequately test); negligence in manufacturing and testing the Heparin; breach of implied warranty; fraudulent misrepresentation; and negligent misrepresentation.

The complaint alleges that the defendant doctors and FRHS are liable for professional negligence because they failed to timely diagnose and treat plaintiff's HITT; prescribed medications, *i.e.*, Neosynephrine and Levophen, to treat persistent hypotension when they knew or should have known plaintiff was suffering from HITT; failed to exercise reasonable care in ensuring that plaintiff received proper medical treatment; and failed to exercise the degree of care or skill ordinarily exercised by others in the medical profession.

All the defendants have filed answers denying liability.

The Baxter defendants affirmatively allege, *inter alia*, that their liability, if any "should be compared to the fault of Plaintiff, parties, and actors involved in the matters alleged in Plaintiff's Complaint." They further allege that plaintiff's injuries were caused by persons other than Baxter over whom Baxter had no control or authority; by the misuse, abuse, alteration, unauthorized use, unintended use, and/or failure properly to utilize, maintain or care for the Heparin product; by the actions of other persons, who caused changes and alterations to be made to the Heparin product; plaintiff's treating physicians were provided proper, complete, and adequate warnings and instructions consistent with the state of medical art and knowledge.

**B. The Notice of Removal**

The Baxter defendants removed the matter to federal court. Although the complaint does not allege any claim arising under federal law, the Baxter defendants alleged in the Notice of Removal (Doc. 1 at p. 4/11) that this court has federal question subject matter

jurisdiction under 28 U.S.C. § 1331 because plaintiff's claims against Baxter "are inextricably intertwined with the comprehensive federal scheme governing prescription drugs." Thus, Baxter concludes, the plaintiff "is challenging the adequacy of FDA and FDCA regulations and procedures with which [Baxter] complied as well as FDA determinations related to heparin."

The Baxter defendants also contend that this court has diversity jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000. While there is no actual "diversity" between the plaintiff and all defendants (as plaintiff and the defendant health care providers all reside in Nebraska), Baxter maintains that defendants Asaad, Welsh, Akbarov, Dudley, Bell, and FRHS were fraudulently joined for the purpose of defeating diversity.

Upon removing the case to federal court, Baxter promptly sought its transfer to the Northern District of Ohio by the Judicial Panel on Multidistrict Litigation, as a tag-along case in MDL No. 1953, *In re: Heparin Products Liability Litigation*.

### C. The Motions to Remand

Plaintiff asks that the case be remanded to state court, arguing that this court has neither diversity nor federal question jurisdiction over his state law claims.

Defendants Asaad, Akbarov and FRHS concur. In light of the state law claims asserted against them, they further argue they should not be subject to the jurisdiction of multidistrict product liability litigation pending in the Northern District of Ohio.

## II. DISCUSSION

A defendant may remove an action from state court to federal court only when a federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Federal district courts have subject matter jurisdiction over cases that meet the standards for diversity jurisdiction and cases that raise federal questions. Diversity jurisdiction exists where the matter in controversy exceeds the sum or value of $75,000, and the parties are citizens of different states. 28 U.S.C. § 1332(a). Federal district courts have "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In general, the party invoking federal jurisdiction bears the burden of proving the jurisdictional requirements. Removal statutes are strictly construed in favor of state court jurisdiction, and this court must resolve all doubts concerning removal in favor of remand. *Nagel v. Wal-Mart Stores, Inc.*, 319 F. Supp. 2d 981, (D.N.D. 2004) (citing *In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993)).

### A. Diversity Jurisdiction; 28 U.S.C. § 1332(a); Fraudulent Joinder

When a plaintiff joins a non-diverse party as a defendant, "the defendant may avoid remand–in the absence of a substantial-federal question–only by demonstrating that the non-diverse party was fraudulently joined." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th

Cir. 2003) (citing *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)).

Within the Eighth Circuit,

> the fraudulent-joinder standard has been stated in varying ways. In *Wiles,* we looked for a "reasonable basis in fact and law" in the claim alleged. 280 F.3d at 871. In *Anderson v. Home Ins. Co.,* 724 F.2d 82, 84 (8th Cir. 1983), we articulated something close to a dismissal standard, approving a removal to federal court, if "on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant." As might be expected, our district courts have used standards that run the gamut – from requiring plaintiff to actually state a cause of action, to a more lenient threshold requiring a removing party to show that there is *no possibility* that the plaintiff will be able to state a cause of action against the resident defendant. *E.g., Reeb v. Wal-Mart Stores, Inc.,* 902 F. Supp. 185, 187-88 (E.D. Mo.1995); *Parnas v. General Motors Corp.,* 879 F. Supp. 91, 92 (E.D. Mo.1995).

*Id*. at 809-10 (emphasis in original).

> The Eighth Circuit, in *Filla*, ultimately held that
>
> a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim. Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent.... However, if there is a "colorable" cause of action – that is, if the state law might impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder.... As we recently stated in *Wiles*, "... joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." 280 F.3d at 871. Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

*Id*. at 810 (footnote omitted).

The court reiterated, "[T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved. In making such a prediction, the district court should resolve all

facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Id.* at 811. In reviewing a fraudulent-joinder claim, "the court has no responsibility to *definitively* settle the ambiguous question of state law." *Id*. (emphasis in original).

In this lawsuit, the plaintiff contends his medical providers acted negligently in failing to timely diagnose HITT and continuing to administer Heparin. In addition, the Heparin they administered was contaminated. It appears to the court that the plaintiff's claims against all the defendants arise out of the same transactions or occurrences and present common questions of fact or law, and the claims are properly joined under Neb. Rev. Stat. § 25-320[1] and/or Fed. R. Civ. P. 20(a)(2)[2]. The Baxter defendants' own affirmative allegations tend to demonstrate the existence of common questions of fact and law as to the administration of Heparin by the plaintiff's medical providers. Plaintiff's negligence claims against his medical providers are logically related to his claims against Baxter. There is, arguably, a reasonable basis for predicting that Nebraska law might impose liability on the Nebraska defendants based upon the facts alleged.

---

[1] Neb. Rev. Stat. § 25-320 provides: "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

[2] Under Fed. R. Civ. P. 20(a)(2), persons may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. "

Although the Baxter defendants say they are amenable to severance of claims to cure their jurisdictional problem, *see* Fed. R. Civ. P. 21, severance would be inappropriate in light of Baxter's affirmative allegations that plaintiff's medical providers were responsible for plaintiff's injuries.

The court thus finds that it cannot exercise diversity jurisdiction in this case.

### B. Federal Question Jurisdiction; 28 U.S.C. § 1331

This court may exercise federal question jurisdiction over claims arising "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Absent diversity, a case filed in state court is not removable to federal court unless it affirmatively alleges a federal claim. *Bates v. Missouri & N. Arkansas R. Co., Inc.*, — F.3d —, 2008 WL 5047644 at *1, Case No. 07-3002 (8th Cir., Dec. 1, 2008) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-8 (2003)).

The Eighth Circuit has recognized that complete preemption provides a narrow exception to the general rule.

> The complete preemption doctrine recognizes that federal law may so wholly displace a state law cause of action that a state law claim is converted into a federal claim from its inception. *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000). Complete preemption is distinguishable from preemption as a defense, because the former has jurisdictional implications while the latter does not. "To be completely preemptive, a statute must have 'extraordinary pre-emptive power,' a conclusion courts reach reluctantly." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

*Id*.

In this case, Baxter does not argue complete preemption. Rather, the Baxter defendants contend the plaintiff's state law claims actually arise under the laws of the United States because Baxter is subject to federal regulation in the manufacture and distribution of Heparin. Thus, Baxter urges the court to exercise federal question jurisdiction by application of the "substantial federal question doctrine."

In this regard, the Eighth Circuit has also recognized that even though a cause of action is created by state law, a case might still arise under the laws of the United States if a well-pleaded complaint establishes that the plaintiff's right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 860 (8th Cir. 2002) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). To fall within this exception, the case must present some substantial, disputed question of federal law as a necessary element of the plaintiff's state-law claims, *id.*, or present a situation where the vindication of a right under state law necessarily turns on some construction of federal law. *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 853 (S.D. Ohio 2002).

Under Nebraska law, proof that the defendants violated a statute or regulation does not necessarily prove negligence or liability, although evidence of such a violation may be considered in determining whether a party was negligent. *See generally* NJI2d Civ. 3.03. While it is likely that Baxter's compliance with federal statutes and regulations will be a

subject of inquiry in this case, it would not be necessary for the plaintiff to prove any such violation in order to prevail on any of his claims against Baxter.

Under these circumstances, the court finds that *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986), is controlling. In *Merrell Dow*, the plaintiff raised six state-law claims, including a claim based on allegations that the drug manufactured by the defendant was misbranded in violation of the Food, Drug, and Cosmetic Act (FDCA). The Court held that the case was properly remanded to federal court, observing that the FDCA did not provide a federal cause of action, and "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." 478 U.S. at 813. "[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id*. at 814. The Court concluded

> a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim "arising under the Constitution, laws, or treaties of the United States."

*Merrell Dow*, 478 U.S. at 817.

Baxter relies largely on *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), in support of its argument in favor of federal question jurisdiction. I defer to the Supreme Court's own summary of its decision in *Grable*:

-11-

*Grable* involved real property belonging to Grable & Sons Metal Products, Inc. (Grable), which the Internal Revenue Service (IRS) seized to satisfy a federal tax deficiency. 545 U.S., at 310, 125 S. Ct. 2363. Grable received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing (Darue). *Ibid*. Five years later, Grable sued Darue in state court to quiet title. Grable asserted that Darue's record title was invalid because the IRS had conveyed the seizure notice improperly. *Id*., at 311, 125 S. Ct. 2363. The governing statute, 26 U.S.C. § 6335(a), provides that "notice in writing shall be given ... to the owner of the property ... or shall be left at his usual place of abode or business...." Grable maintained that § 6335(a) required personal service, not service by certified mail. 545 U.S., at 311, 125 S. Ct. 2363.

Darue removed the case to federal court. Alleging that Grable's claim of title depended on the interpretation of a federal statutory provision, i.e., § 6335(a) of the Internal Revenue Code, Darue invoked federal-question jurisdiction under 28 U.S.C. § 1331. We affirmed lower court determinations that the removal was proper. "The meaning of the federal tax provision," we said, "is an important issue of federal law that sensibly belongs in a federal court." 545 U.S., at 315, 125 S. Ct. 2363. Whether Grable received notice adequate under § 6335(a), we observed, was "an essential element of [Grable's] quiet title claim"; indeed, "it appear[ed] to be the only ... issue contested in the case." *Ibid*.

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-700 (2006). The court held

that the case warranted federal jurisdiction:

Grable's state complaint must specify "the facts establishing the superiority of [its] claim," Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes," *United States v. Rodgers,* 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), and the ability of the IRS to

-12-

> satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor....

545 U.S. at 315-16 (footnote omitted). Significantly, the *Grable* Court found that its decision in *Merrell Dow* was "not to the contrary."

> *Merrell Dow* considered a state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition, and was thus presumptively negligent under Ohio law. [478 U.S.] at 806, 106 S. Ct. 3229. The Court assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found "it would ... flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation ... is said to be a ... 'proximate cause' under state law." *Id.*, at 812, 106 S. Ct. 3229.

The Court advised that

> *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected *Merrell Dow's* result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of

> jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.

*Grable*, 545 U.S. at 318.

The Supreme Court subsequently emphasized in *Empire* that the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. at 700. Thus, while "'arising under' federal jurisdiction over state law claims may be present if there is no federal cause of action," the circumstances in which this is true are quite rare. *Allen v. GlaxoSmithKline PLC*, 2008 WL 2247067 at *8, No. 07-5045 (E.D. Pa., May 30, 2008) (citing *Empire*, 547 U.S. at 701).

> Generally, for pharmaceutical products liability cases filed in state court and raising FDCA-related state law claims, federal "arising under" jurisdiction does not exist pursuant to *Merrell Dow*. *See e.g. Greene v. Novartis Pharmaceuticals Corp.*, 2007 WL 3407429 (M.D. Ga. 2007) (remanding case where plaintiff alleged that defendant pharmaceutical manufacturer fraudulently misrepresented drug's safety and failed to warn of drug's dangers); *Caggiano v. Pfizer, Inc.*, 384 F. Supp. 2d 689 (S.D.N.Y. 2005) (remanding case where plaintiff alleged "classic state-law claims [but] the complaint [was] also peppered with allegations that the defendants violated various federal statutes and regulations ... for example ... that defendants deliberately failed to seek required FDA approval for many uses ...").

*Allen*, 2008 WL 2247067 at *9. Cf. *Greene v. Novartis Pharmaceuticals Corp.*, 2007 WL 3407429, No. 07-00091 (M.D. Ga., Nov. 14, 2007) (presence of potential federal defenses to product liability claim held insufficient to confer federal question jurisdiction).

In the case at bar, the plaintiff's claims do not arise under federal law. In order to prevail on his state law claims against Baxter, the plaintiff need not prove any violation of a federal law or regulation. In his claims for fraudulent and negligent misrepresentation, the plaintiff alleges that Baxter provided false or misleading information to the FDA. Even assuming that the complaint states a claim of fraud on the FDA, "a fraud on the FDA claim does not trigger federal jurisdiction." *Allen*, 2008 WL 2247067 at *10. Although the pharmaceutical industry is subject to comprehensive federal regulation, Baxter was not operating under the direction of any federal officer. *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d at 161-62. Finally, the resolution of plaintiff's claims will require fact-specific inquiry and will not be controlling in numerous other cases.

For these reasons, the court finds that plaintiff's complaint does not raise any substantial federal question and the court cannot exercise federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## RECOMMENDATION

Because this court cannot exercise jurisdiction over the plaintiff's claims pursuant to either 28 U.S.C. § 1331 or 28 U.S.C. § 1332,

**IT IS RECOMMENDED**

1. that Baxter's Motion to stay proceedings pending transfer by the Judicial Panel on Multidistrict Litigation (Doc. 10) be denied,

2. that Plaintiff's motion to remand this matter to state court (Doc. 17) be granted, and

3. that the Motion to Remand (Doc. 20) filed by defendants Hakam Asaad, Alec Akbarov and Faith Regional Health Services be granted.

Pursuant to NECivR 72.3, a party may object to a this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED December 3, 2008.**

                                         **BY THE COURT:**

                                         **s/ F.A. Gossett**
                                         **United States Magistrate Judge**